**Quaynell Duron KING, Appellant**

v.

**COMMONWEALTH of Kentucky, Appellee.**

Nos. 2011–SC–000110–TG, 2011–CA–000080–MR, 2011–SC–000151–TG, 2011–CA–000093–MR.

Supreme Court of Kentucky.

Aug. 23, 2012.

---

**28.** Emphasis added.

**29.** *Id.*

Erin Hoffman Yang, Assistant Public Advocate, Department of Public Advocacy, Frankfort, KY, Counsel for Appellant.

Jack Conway, Attorney General of Kentucky, Courtney J. Hightower, Assistant Attorney General, Office of Attorney General, Criminal Appellate Division, Frankfort, KY, Counsel for Appellee.

Opinion of the Court by Justice SCOTT.

Appellant, Quaynell Duron King, is currently before this Court appealing his convictions in two separate cases from Fayette Circuit Court. In the first, he was sentenced to seventeen years' imprisonment after being found guilty of first-degree trafficking in a controlled substance, possession of marijuana, second-degree fleeing or evading, and of being a persistent felony offender (PFO) in the first degree. In the second, he was sentenced to twenty-six years' imprisonment after being found guilty of second-degree escape, first-degree possession of a controlled substance, and of being a first-degree persistent felony offender. He originally filed his appeals in both cases in

the Court of Appeals. However, on the Court of Appeals' recommendation, we granted transfer of both appeals.[1]

Appellant argues that: (1) the trial court erroneously denied his motion to suppress evidence collected from the vehicle he was driving, resulting in a violation of his right to be free from unreasonable searches and seizures; (2) he was denied his Constitutional right to trial by an impartial jury; (3) he was improperly denied his right to proceed *pro se;* (4) the sentencing phase was tainted by improper closing arguments; (5) he is entitled to retroactive application of the amended penalty for possession of a controlled substance; and (6) his aggregate sentence for escape and possession should be capped at twenty years.

## I. BACKGROUND

### A. First Case: Trafficking, Fleeing or Evading, Possession of Marijuana, and PFO

On August 13, 2007, Lexington Police coordinated a controlled purchase of narcotics between Appellant and a confidential informant. The informant set up a meeting with Appellant near Appellant's home, and two detectives proceeded to the location with the informant. Two undercover vehicles and two marked police cruisers accompanied the detectives and informant to the meeting site.

After arriving, officers located Appellant in a Jeep which had stopped some distance behind them. The marked police vehicles moved in without lights or sirens so the officers could question Appellant in hopes of developing probable cause or obtaining consent to search the vehicle by drug dog. Once the marked vehicles were within his view, however, Appellant fled at a high rate of speed. The officers immediately initiated emergency lights and pursued Appellant. Shortly thereafter, Appellant pulled into a driveway, jumped out of the Jeep, and fled on foot; the Jeep rolled into a parked car. He ran about forty yards before tripping and surrendering to custody. The officers arrested him for fleeing or evading.

The officers searched the Jeep and found approximately sixteen grams of crack cocaine and 3.4 grams of marijuana in the center console. They also found $3,125 cash on Appellant's person. Appellant moved to suppress the evidence confiscated from the Jeep, but the trial court overruled his motion, finding he had abandoned the vehicle. The court also found reasonable, articulable suspicion of criminal activity based upon Appellant's conduct when the police attempted to initiate the stop.

A Fayette Circuit Court jury convicted Appellant of first-degree trafficking in a controlled substance, second-degree fleeing or evading police, and first-degree possession of marijuana. For the trafficking conviction, the jury recommended a ten-year prison sentence. Thereafter, the jury found Appellant guilty of being a first-degree PFO, and enhanced its recommended sentence to seventeen years in prison. The trial court adopted this recommendation.[2] Appellant appealed to the

---

1. Because Appellant received a sentence in excess of twenty years' imprisonment for his convictions for second-degree escape, first-degree possession of a controlled substance, and of being a first-degree persistent felony offender, this Court was the proper forum for his appeal of those convictions. Ky. Const. § 110(2)(b). The Court of Appeals recommended we grant transfer of Appellant's other case for purposes of judicial economy. We granted transfer of both and ordered that the two cases be heard together.

2. Appellant waived sentencing by the jury on the other counts; the trial court later sentenced him to twelve months each on the

Court of Appeals, and we granted transfer to this Court.

### B. Second Case: Escape, Trafficking, and PFO

While Appellant was incarcerated at the Fayette County Detention Center awaiting trial in the first case, he was granted a release pass to attend an off-site program once a week. On June 22, 2009, Appellant failed to return to the detention center after the program. On January 14, 2010, Lexington Police and the U.S. Marshal's Service arrested Appellant; officers found one bag of cocaine on Appellant's person containing 32.4 grams of crack, and in the same bag, but packaged separately in small baggies, an additional 6.6 grams of crack. A small amount of cash and two cell phones were also discovered.

Appellant was charged with second-degree escape, first-degree trafficking in a controlled substance, and being a first-degree PFO. The charges were severed for purposes of trial. He was ultimately convicted of second-degree escape, first-degree possession of a controlled substance, and being a first-degree PFO, and sentenced to a total of twenty-six years' imprisonment. He appeals as a matter of right. Ky. Const. § 110(2)(b). Additional facts will be provided where helpful.

## II. ANALYSIS

### A. First Case: Trafficking, Fleeing or Evading, Possession, and PFO

Appellant's lone argument with respect to his convictions for trafficking in a controlled substance, possession of marijuana, fleeing or evading, and PFO is that the trial court erroneously denied his motion to suppress evidence collected from the Jeep, resulting in a violation of his constitutional rights to be free from unreasonable searches and seizures. *See* U.S. Const. amend IV; Ky. Const. § 10. Specifically, Appellant contends that the trial court incorrectly concluded that (1) he had abandoned the Jeep, and (2) that his reckless driving created a reasonable and articulable suspicion of criminal activity sufficient to justify a warrantless search of the Jeep.

■ When reviewing an order denying a motion to suppress, we consider the trial court's findings of fact "conclusive" if they are "supported by substantial evidence." RCr 9.78. "Using those facts [if supported], the reviewing court then conducts a *de novo* review of the trial court's application of law to those facts to determine whether the decision is correct as a matter of law." *Commonwealth v. Jones,* 217 S.W.3d 190, 193 (Ky.2006).

■ Warrantless searches are "per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967) (footnote omitted). Relevant to this case is the abandoned property exception. *See California v. Greenwood,* 486 U.S. 35, 108 S.Ct. 1625, 100 L.Ed.2d 30 (1988); *Watkins v. Commonwealth,* 307 S.W.3d 628 (Ky.2010). Individuals cannot have a reasonable expectation of privacy in property they abandon; thus, a search of abandoned property is not, without more, unreasonable. *See Greenwood,* 486 U.S. at 40–41, 108 S.Ct. 1625; *Watkins,* 307 S.W.3d at 630. "What constitutes abandoned property has to be determined on a case-by-case basis." *Watkins,* 307 S.W.3d at 630. "[T]rial courts must weigh the

---

fleeing or evading conviction and possession of marijuana conviction, both to be served concurrently with his trafficking sentence.

evidence and consider the circumstances in reaching a conclusion as to whether the property has, in fact, been abandoned." *Id.* (citation omitted).

■ We recently addressed a very similar issue in *Watkins*. *See id.* In that case, the defendant led police on a high-speed chase when they tried to pull him over for speeding. *Id.* at 629. Shortly thereafter, the defendant spun out in the median and blew a tire; he immediately exited the vehicle and fled on foot. *Id.* Police subsequently searched the vehicle and discovered marijuana and crack cocaine in the trunk. *Id.* The defendant attempted to argue that the evidence should be suppressed as the fruits of an unreasonable search. *Id.*

We disagreed, holding that because the defendant had abandoned the vehicle, he did not have standing to claim a reasonable expectation of privacy in it or its contents. *Id.* at 629–30. In doing so, we noted, *inter alia,* that: (1) he had led the police on a high-speed chase; (2) after he spun out he immediately fled on foot; and (3) he left incriminating evidence in the vehicle. *Id.* at 630. Finally, and importantly, we noted the following:

> Leaving property behind, when in flight from apprehension by law enforcement, must be considered in and of itself an abandonment of that property. When one or more persons are fleeing and evading law enforcement officers, who are in hot pursuit, and the car is stopped or becomes disabled and all occupants

flee from the vehicle, that vehicle is considered abandoned and may be subject to a warrantless search.

*Id.* This is precisely the situation presented by this case.

First, upon seeing the police cruisers, Appellant fled, initiating a high-speed chase. Second, once the police caught up with the fleeing vehicle, Appellant pulled into a driveway and exited the vehicle while it was still moving and fled on foot; the vehicle was never shifted into the park position and rolled into another vehicle. Third, he left incriminating evidence in the vehicle. In sum, he left "property behind, when in flight from apprehension by law enforcement." *Id.* Thus, it *"must* be considered in and of itself an abandonment of that property." *Id.* (Emphasis added).

The trial court's findings of fact were supported by substantial evidence, and are therefore conclusive. *See* RCr 9.78. Moreover, upon *de novo* review of those facts, it is clear to us that Appellant abandoned the vehicle.[3] We therefore hold that Appellant does not have standing to challenge the warrantless search of the Jeep,[4] and affirm his convictions as to this case for trafficking, fleeing or evading, possession of marijuana, and first-degree PFO.

**B. Second Case: Escape, Possession, and PFO**

Appellant's convictions for second-degree escape and first-degree possession of

---

**3.** Appellant argues that he did not, in fact, abandon the vehicle. He contends that he was unaware that the vehicles pursuing his automobile were law enforcement officers, and that the fact that he pulled into a driveway before fleeing on foot is evidence that he intended to later retrieve the vehicle. In light of our discussion in *Watkins,* and the fact that the primary vehicles in pursuit of Appellant were marked police vehicles with their emer-

gency lights initiated, we find Appellant's argument to be meritless.

**4.** Thus, we need not address Appellant's remaining argument—i.e., that the trial court erroneously found that, in addition to the search being justified by the abandonment exception, the police had reasonable, articulable suspicion of criminal activity sufficient to justify a warrantless search.

a controlled substance resulted from two separate trials.[5] His assignments of error are specific to the trials in which they allegedly occurred. We therefore must review the issues in each trial separately.

### 1. Escape Trial

■ Appellant's sole argument with respect to his escape conviction is that he was denied his right to a trial by an impartial jury. At the very beginning of Appellant's escape trial, a bomb threat was called in to Fayette District Court. For precautionary purposes, Fayette Circuit Court, where Appellant's criminal trial was taking place, was also evacuated. Consequently, prospective jurors in Appellant's trial were required to stand outside the courthouse for about an hour.

When the proceedings resumed, defense counsel objected to allowing the evacuated jurors to sit. Specifically, counsel informed the trial court: "I heard many attorneys in the private bar and other defense attorneys talking about 'it must have been the defendant who had the trial today,' and I have concerns that percolated through the jury and has tainted the jury pool, biasing them against [Appellant] just for fact he is sitting here on trial today." The trial court denied the motion, adding: "I will certainly voir dire the jury on that issue and if any issues come up I will revisit it."

During voir dire, the trial court questioned the venire about the incident and thoroughly explored the possibility of jury taint. No member of the venire ever came forward with any bomb-threat-related reason that they could not sit and be a fair juror, and after regular voir dire, the trial was heard without incident.

■ Appellant nevertheless argues that he was denied his right to a trial before an impartial jury. See U.S. Const. amend. VI; Ky. Const. § 11. Specifically, he alleges that the trial court's voir dire of the bomb threat insufficiently explored the possibility of a tainted jury pool. Thus, he contends, the panel was possibly tainted and should have been excused, and he is therefore entitled to a new trial. We review for abuse of discretion. *Tabor v. Commonwealth*, 948 S.W.2d 569, 571 (Ky. App.1997) ("The trial court has broad discretion in determining whether a jury panel should be dismissed, and its ruling should not be disturbed absent a clear abuse of discretion.").

We cannot conclude that the trial court abused its discretion in denying Appellant's motion to dismiss the entire venire. First, the trial court explained to the venire that it was its understanding that a bomb threat had been called into the *district* courthouse, *not* the circuit courthouse in which they were sitting—and the members of the jury indicated that that was also what they heard.[6]

Second, the court asked the venire the following questions to probe whether any member of the jury pool had heard anything that might affect their impartiality:

---

5. Although Appellant was contemporaneously indicted on these offenses, the charges were severed for purposes of trial.

6. Specifically, the trial court explained:
 [*Judge:*] Next, I am going to move to a question with regard to the unusual start of the trial today, which included you all standing on a sidewalk for an hour or so.... That doesn't happen a lot.... My information is that this bomb threat was called into the district court building, which is the other building. But in the interest of safety they cleared both buildings. I know that people were on the street, talking to each other.
 . . . .
 Did you all know? What were you all told, or what went through the street?
 [*Unidentified juror:* ] What you just said.

(1) Did anyone hear anything on the street that would affect them in today's trial?

(2) Did you hear something, or assume something, or did anyone talk about this case in any way?

(3) Did anybody talk about the bomb?

No juror answered any of these questions in the affirmative.

If that were not enough, the trial court gave the veniremembers *another* opportunity, asking them if there was "any reason that because we started this way—you're tired, you're sick of this, you don't like it, you heard something—anything about the unusual nature here that would cause anybody to have any concern that they could sit and be a fair juror today in this trial?" Again, no juror answered in the affirmative.

Finally, the trial court gave the veniremembers an open-ended invitation to come forward with any information that might call their impartiality into question, stating: "At any point, if you think of something, it's fine." Indeed, the trial court invited the prospective jurors to answer these questions at the bench, but nobody ever came forward.

We conclude that the trial court did not abuse its discretion in denying Appellant's motion to excuse the jury panel. The trial court sufficiently probed the possibility of a tainted venire and gave the veniremembers ample opportunity to come forward with any information that might call

into question their impartiality. Indeed, the trial court probed *all* of defense counsel's concerns in voir dire.[7] Without more, the facts surrounding the bomb threat are simply not sufficiently suggestive of any wrongdoing on Appellant's part to automatically bias a jury panel, and there is otherwise no evidence whatsoever of jury taint. We therefore affirm Appellant's conviction for second-degree escape.

### 2. Possession of a Controlled Substance Trial

With respect to his severed trial for trafficking (for which he was convicted of the lesser included offense of possession of a controlled substance), Appellant argues that: (1) he was improperly denied his right to proceed *pro se;* (2) the sentencing phase was tainted by improper closing arguments; (3) he is entitled to retroactive application of the amended penalty for possession of a controlled substance; and (4) his aggregate sentence for escape and possession should be capped at twenty years.

### a. Denial of Right to Self-Representation

 Appellant first argues that the trial court committed reversible error by denying him the right to proceed *pro se.* Specifically, he contends that his rights under the Sixth and Fourteenth Amendments to the United States Constitution, and Section Eleven of the Kentucky Constitution, were violated by the trial court's allegedly erroneous finding that his re-

---

7. Defense counsel's argument in support of her motion to dismiss the entire jury panel was:

> Your Honor, I would make a motion to object to using the jurors that have been brought here today, because of the bomb threat that was made to the courthouse this morning and for the length of time that the jury has been outside, we don't know who they have talked to, what they have been

discussing amongst themselves. I heard many attorneys in the private bar and other defense attorneys talking about it must have been the defendant who had the trial today, and I have concerns that percolated through the jury and has tainted the jury pool, biasing them against [Appellant] just for the fact he is sitting here on trial today.

All of these concerns were addressed by the trial court's voir dire.

quest was not knowing, intelligent, and voluntary. We review *de novo. See McKaskle v. Wiggins*, 465 U.S. 168, 177 n. 8, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984) ("Since the right of self-representation is a right that when exercised usually increases the likelihood of a trial outcome unfavorable to the defendant, its denial is not amenable to "harmless error" analysis. The right is either respected or denied; its deprivation cannot be harmless.").[8]

The Sixth Amendment to the United States Constitution and Section Eleven of the Kentucky Constitution guarantee criminal defendants the right to counsel as well as the converse right to self-representation. *Faretta v. California*, 422 U.S. 806, 817, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975);[9] *Wake v. Barker*, 514 S.W.2d 692, 695 (Ky.1974). However, there are requirements to invoking the right to self-representation. As a threshold matter, the request to proceed *pro se* must be both timely and unequivocal. *See*

*Deno v. Commonwealth*, 177 S.W.3d 753, 757 (Ky.2005). Additionally, a criminal defendant must knowingly, intelligently, and voluntarily relinquish the "traditional benefits associated with the right to counsel." *Faretta*, 422 U.S. at 835, 95 S.Ct. 2525; *see also Hill v. Commonwealth*, 125 S.W.3d 221, 226 n. 2 (Ky.2004) (citing *Shafer v. Bowersox*, 329 F.3d 637, 651 (8th Cir. 2003)).[10] Before relinquishing these benefits, he "should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" *Faretta*, 422 U.S. at 835, 95 S.Ct. 2525 (citing *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279, 63 S.Ct. 236, 87 L.Ed. 268 (1942)). In short, the request must be: (1) timely; (2) unequivocal; and (3) knowing, intelligent, and voluntary.

### (i) Appellant's request was timely.

To be effective, a request to proceed *pro se* must be timely.[11] *Soto*, 139

---

8. The abuse of discretion standard is inappropriate in this situation because, as we noted in *Hummel v. Commonwealth*, the trial court often does not have discretion to deny the defendant's request. 306 S.W.3d 48, 52 (Ky. 2010) ("[I]f the court could deny a request because it believed it would be against a defendant's interest, then the oft-quoted maxim 'a man who represents himself has a fool for a client and a fool for a lawyer' would seem to make granting these requests always discretionary, which is clearly not the case."). However, the abuse of discretion standard is employed when reviewing a trial court's determination that a defendant is "unable or unwilling to abide by courtroom protocol as he conducts his defense, or if it is made purely as a tactic to disrupt or delay proceedings." *Id.* at 53. The abuse of discretion standard is also appropriate when reviewing a trial court's decision to grant a defendant's untimely request to proceed *pro se. See, e.g., Applegate v. Commonwealth*, 299 S.W.3d 266, 273 (Ky.2009). Neither of these scenarios are presented by this case.

9. The Sixth Amendment right to self-representation applies to the states through the Due Process Clause of the Fourteenth Amendment. *Id.* at 834, 95 S.Ct. 2525.

10. Although *Faretta* only requires the waiver of counsel to be "knowing and intelligent," 422 U.S. at 835, 95 S.Ct. 2525, this Court recognized in *Hill v. Commonwealth* that "the additional finding that the waiver is Voluntary' is obviously necessary to protect the defendant's constitutional rights." 125 S.W.3d at 226 n. 2 (citing *Shafer v. Bowersox*, 329 F.3d at 651; *United States v. Manjarrez*, 306 F.3d 1175, 1181 (1st Cir.2002); and *United States v. Stubbs*, 281 F.3d 109, 118 (3d Cir.2002)), *modified by Depp v. Commonwealth*, 278 S.W.3d 615, 619 (Ky.2009).

11. We note, however, that a trial court retains discretion to grant an untimely request to proceed *pro se. See Soto v. Commonwealth*, 139 S.W.3d 827, 857 (Ky.2004) ("The trial court may, of course, grant an untimely request but that is a decision lying within its sound discretion."). *See also Robards v. Rees*, 789 F.2d 379, 384 (6th Cir.1986).

S.W.3d at 857. " 'A demand for self-representation is timely if made before meaningful trial proceedings have begun.... [A] request is timely if made before the jury is selected or before the jury is empaneled [sic].' " *Id.* (quoting *United States v. Young*, 287 F.3d 1352, 1354–55 (11th Cir.2002)).

Here, Appellant's second request to proceed *pro se* was submitted via written motion and filed October 26, 2010—the day before trial was to commence.[12] Although Appellant's request was made the day before trial, there is no allegation that it was untimely. And in any event, it was made "before meaningful trial proceedings [had] begun." *Id.* Thus, we conclude that Appellant's request was timely.

### (ii) Appellant's request was unequivocal.

■ In addition to being timely, a request to proceed *pro se* must also be unequivocal. *See Hummel v. Commonwealth*, 306 S.W.3d 48, 51–52 (Ky.2010). The Commonwealth asserts that Appellant's request was equivocal, and therefore ineffective. It bases this assertion on the fact that Appellant, at his *Faretta* hearing, expressed dissatisfaction with appointed counsel as well as his wish to be appointed different counsel. The Commonwealth's argument is misplaced. *See Batchelor v. Cain*, 682 F.3d 400 (5th Cir.2012) ("Nor can it be said that Batchelor's expression of dissatisfaction with his appointed counsel somehow detracted from the clarity of his *Faretta* motion. In *Faretta* itself, the defendant requested to proceed pro se because of dissatisfaction with appointed counsel.").

■ The requirement that a criminal defendant unequivocally request to proceed *pro se* is a threshold requirement to receiving a *Faretta* hearing, not a requirement demanded at the hearing. *See St. Clair v. Commonwealth*, 319 S.W.3d 300, 311 (Ky.2010) ("[S]hould [defendant] make an unequivocal request to proceed pro se or with hybrid representation—in other words, to make either a full or a limited waiver of his right to counsel—under our precedent, a *Faretta* hearing is required."). Stated differently, the requirement that a defendant unequivocally assert his right to self-representation is a *condition precedent* of receiving a *Faretta* hearing; whatever happens at that hearing speaks to whether waiving the right to counsel was knowing, intelligent, and voluntary. *See id.*

Here, Appellant submitted two hand-written motions clearly invoking his right to proceed *pro se*.[13] Indeed, the very fact that the trial court held a *Faretta* hearing indicates that Appellant's request was unequivocal. *See Hummel*, 306 S.W.3d at 52 ("Implicit in having the [*Faretta* ] hearing

---

**12.** Appellant's first request to proceed *pro se* was submitted via written motion and filed on September 15, 2010. The trial court held a *Faretta* hearing on September 29, where Appellant asserted that, although he still wished to represent himself, he did not want to forfeit any appealable issues that might otherwise be available if he proceeded with appointed counsel (e.g., ineffective assistance of counsel). Thereafter, Appellant withdrew his motion.

**13.** The first hand-written motion, filed September 15, 2010, states that Appellant is moving the trial court "to allow the defendant to represent himself...." It goes on to assert that it was Appellant's belief that appointed counsel was not representing his best interests, and that "his interests could be best served by self-representation in this matter." The motion then requests the trial court to appoint a different public defender as stand-by counsel.

The second hand-written motion, filed October 26, 2010, is virtually identical to the first.

... is the finding that Appellant made a proper, unequivocal request. Otherwise, there was no reason to have a *Faretta* hearing...."). Appellant's desire to represent himself may have been derived from frustration with appointed counsel, but that is irrelevant in this case. *See Alongi v. Ricci,* 367 Fed.Appx. 341, 346–47 (3d Cir.2010) ("It is the rare defendant who will ask to proceed *pro se* even though he/she is thoroughly delighted with counsel's representation, ability, and preparation. Thus, that a defendant wishes to proceed without representation because s/he is dissatisfied with that representation is not usually relevant to whether that defendant's request is clear and unequivocal.") (citations and quotation marks omitted). We therefore conclude that Appellant satisfied his obligation to unequivocally request to proceed *pro se.*

***(iii) Appellant's waiver of his right to counsel was made knowingly, intelligently, and voluntarily.***

 Finally, to be effective, a criminal defendant's waiver of his right to counsel must be made knowingly, intelligently, and voluntarily. *Faretta,* 422 U.S. at 835, 95 S.Ct. 2525; *Hill,* 125 S.W.3d at 226 n. 2 (citations omitted).[14] "Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" *Faretta,* 422 U.S. at 835, 95 S.Ct. 2525 (quoting *Adams,* 317 U.S. at 279, 63 S.Ct. 236). "[T]he constitutional minimum for determining whether a waiver was 'knowing and intelligent' is that the accused be made sufficiently aware of his right to have counsel present and of the possible consequences of a decision to forgo the aid of counsel." *Depp,* 278 S.W.3d at 618 (discussing *Iowa v. Tovar,* 541 U.S. 77, 124 S.Ct. 1379, 158 L.Ed.2d 209 (2004)). However, a defendant's "technical legal knowledge, as such, [is] not relevant to an assessment of his knowing exercise of the right to defend himself." *Faretta,* 422 U.S. at 835, 95 S.Ct. 2525.

To ensure that individuals opting to proceed *pro se* do so knowingly and intelligently, this Court in *Commonwealth v. Terry* cited with approval the model *Faretta* hearing questions used in federal courts. 295 S.W.3d 819, 824–25 (Ky.2009).[15] Al-

---

**14.** Although *Faretta* only requires the waiver be made "knowingly and intelligently," as indicated in note 10 *supra,* our decision in *Hill* requires that it must also be made "voluntarily."

**15.** In *Terry,* we provided the following sample, slightly modified for usage in Kentucky state courts rather than federal courts:

When a defendant states that he wishes to represent himself, you should ... ask questions similar to the following:
(a) Have you ever studied law?
(b) Have you ever represented yourself or any other defendant in a criminal action?
(c) You realize, do you not, that you are charged with these crimes:
(Here state the crimes with which the defendant is charged.)

(d) You realize, do you not, that if you are found guilty of the crime charged in Count I the court ... could sentence you to as much as ___ years in prison and fine you as much as ___ $ ___?
(Then ask [the defendant] a similar question with respect to each other crime with which he may be charged in the indictment or information.)
(e) You realize, do you not, that if you are found guilty of more than one of those crimes[,] this court can order that the sentences be served consecutively, that is, one after another?
(f) You realize, do you not, that if you represent yourself, you are on your own? I cannot tell you how you should try your case or even advise you as to how to try your case.

though we also indicated that "no script for the trial court is required or is always and invariably sufficient for all circumstances in which a defendant seeks to waive the right to counsel," *id.* at 825, the *Terry* colloquy gives trial courts a basis upon which to sustain or deny a defendant's request, and allows for meaningful appellate review. With these points in mind, we now turn to Appellant's waiver to determine whether it was made knowingly, intelligently, and voluntarily.

■ First, at the beginning of Appellant's October 26, 2010 *Faretta* hearing, the trial court reminded Appellant that he had already moved to proceed *pro se* and withdrawn the previous motion. The court asked him if he had again changed his mind and whether he was reasserting his right to self-representation.[16] Appellant

replied that he again wished to proceed *pro se.*

Next, after some preliminary questions, the trial court engaged Appellant in the *Terry* colloquy. Appellant's answers to the court's questions indicated that he understood the following: (a) the charges against him; (b) the seriousness of the charges; (c) the potential PFO sentence enhancements; (d) that he was entitled to be represented by an attorney, and that if he could not afford one that the court would appoint one; (e) that sentences for any convictions in the case at bar and other pending cases could run consecutively; (f) that the court could not help him try his case or advise him in any way; (g) that although he was a layperson he was still bound by the rules of the court, evidence, and criminal procedure; and (h) that if he decided to take the witness stand he would

(g) Are you familiar with the [Kentucky] Rules of Evidence?

(h) You realize, do you not, that the [Kentucky] Rules of Evidence govern what evidence may or may not be introduced at trial and, in representing yourself, you must abide by those rules?

(i) Are you familiar with the [Kentucky] Rules of Criminal Procedure?

(j) You realize, do you not, that those rules govern the way in which a criminal action is tried ... ?

(k) You realize, do you not, that if you decide to take the witness stand, you must present your testimony by asking questions of yourself? You cannot just take the stand and tell your story. You must proceed question by question through your testimony.

(*l*) (Then say to the defendant something to this effect):

I must advise you that in my opinion[,] you would be far better defended by a trained lawyer than you can be by yourself. I think it is unwise of you to try to represent yourself. You are not familiar with the law. You are not familiar with court procedure. You are not familiar with the rules of evidence. I would strongly urge you not to try to represent yourself.

(m) Now, in light of the penalty that you might suffer if you are found guilty and in light of all of the difficulties of representing yourself, is it still your desire to represent yourself and to give up your right to be represented by a lawyer?

(n) Is your decision entirely voluntary on your part?

(*o*) If the answers to the two preceding questions are in the affirmative, [and in your opinion, the waiver of counsel is knowing, intelligent, and voluntary,] you should then say something to the following effect:

"I find that the defendant has knowingly[, intelligently,] and voluntarily waived his right to counsel. I will therefore permit him to represent himself."

295 S.W.3d at 824–25 (citing *United States v. McDowell*, 814 F.2d 245, 251–52 (6th Cir. 1987)).

**16.** Appellant informed the court that he had withdrawn the previous motion after appointed counsel had promised to discuss his case and review his options with him. However, appointed counsel allegedly broke those promises, he was unable to contact her, he was unable to contact her supervisor, and he once again wished to represent himself.

have to present his testimony by asking himself questions.

Appellant also indicated that he was familiar with the rules of court,[17] evidence, and criminal procedure. Although there is substantial case law indicating that a defendant's "technical legal knowledge, as such, [is] not relevant to an assessment of his knowing exercise of the right to defend himself," *Faretta,* 422 U.S. at 835, 95 S.Ct. 2525, the trial court engaged Appellant in a lengthy discussion to determine whether he was familiar with *specific* rules of evidence and criminal procedure.[18]

In any event, after engaging in the *Terry* colloquy, the trial court asserted its opinion that Appellant didn't *really* want to represent himself, but instead that he wanted to be represented by someone *other* than appointed counsel. Appellant agreed that he was unhappy with appointed counsel, and that he did not want to represent himself if he had "to go to court tomorrow." He did not, however, withdraw his motion.

After the court reminded Appellant that trial was scheduled for the next day, the following dialogue ensued:

> *Court:* It's not that you feel that you're competent to represent yourself, it's not that you feel you're qualified to represent yourself—you're not satisfied with [appointed counsel]. Correct?
>
> *Appellant:* I feel like I could probably get the same amount of time that [appointed counsel] is going to get me....

Then, the court explained to Appellant that he was facing potentially fifty years in prison; Appellant said that he understood that. The court asked: "And you think you want to represent yourself?" After a contemplative pause, Appellant affirmatively answered: "... There's no other way." Appellant then agreed that he understood that if he represented himself that he would forfeit an ineffective assistance of counsel claim.

Despite Appellant's overwhelming indication that he wished to represent himself, that he was aware that he was bound by the rules, and that he knew he was facing significant prison time, the trial court denied his request to proceed *pro se*, making the following findings on the record:

> Based upon the testimony of Mr. King, the court is going to deny Mr. King's request to represent himself in this matter. The court does not find that his waiver of his right to counsel is knowingly, intelligently, and voluntarily made. The court has sincere reservations regarding his knowledge of criminal rules of procedure, the Kentucky rules of evidence, trial procedure, the evidence to be introduced, as well as the underlying motive or apparent motivations behind Mr. King—which evidences not so much a desire to represent himself, just dissatisfaction with his current court-appointed counsel. So on that basis, the court is going to find that there is not a knowing, voluntary, and intelli-

---

**17.** He informed the court that he had been reviewing the 2009 Kentucky Rules of Court book.

**18.** For example, when Appellant answered that he was familiar with the rules of evidence, the court asked him: "What is KRE 403?" We note here that the model questions in *Terry* suggest that a trial court ask whether a defendant wishing to proceed *pro se* is "fa-

miliar" with the rules of evidence, not whether he can recite them from memory. What the *Terry* colloquy strives to determine is not whether a defendant who wishes to represent himself knows the rules of evidence and criminal procedure, but rather that he is aware that there are such rules and that he will be bound by them, notwithstanding his layperson status.

gent waiver, and is going to deny Mr. King's request to represent himself.

The trial court's ruling was erroneous.

▉▉▉▉ As previously mentioned, a defendant's lack of knowledge of the rules of court, criminal procedure, and evidence is irrelevant with respect to whether his waiver of the right to counsel was made knowingly, intelligently, and voluntarily; that he acknowledges this deficiency is relevant. Similarly, a defendant's dissatisfaction with appointed counsel is essentially irrelevant to this determination. *See Alongi,* 367 Fed.Appx. at 346–47. It is the defendant's constitutional right to waive for whatever reasons he deems sufficient. A trial court may not prevent a defendant from exercising his right to proceed *pro se* just because it disapproves of the defendant's motives,[19] unless, of course, the defendant's motive is "to disrupt decorum of court, to abuse the judicial system, to manipulate the trial process, or to serve as a tactic for delay." *Hummel,* 306 S.W.3d at 52.

Here, it is clear that Appellant timely and unequivocally asserted his right to represent himself, and knowingly, intelligently, and voluntarily accepted the dangers inherent in self-representation. That is all that is required under *Faretta,* 422 U.S. at 835, 95 S.Ct. 2525. However, apparently worried about Appellant's perceived lack of familiarity with specific rules of court, evidence, and criminal procedure, the trial court denied his request. This is an improper reason to deny a defendant's request to proceed *pro se.*[20] *See Hummel,* 306 S.W.3d at 52 (finding that trial court's belief that it was not in defendant's best interests and that defendant was not

skilled enough was an improper reason to deny request to proceed *pro se* ).

Appellant was "made aware of the dangers and disadvantages of self-representation, so that the record ... establish[ed] that 'he kn[ew] what he [was] doing and his choice [was] made with eyes open.'" *Faretta,* 422 U.S. at 835, 95 S.Ct. 2525 (quoting *Adams,* 317 U.S. at 279, 63 S.Ct. 236). The trial court's colloquy exceeded the constitutional minimum of making Appellant "sufficiently aware of his right to have counsel present and of the possible consequences of a decision to forgo the aid of counsel." *Depp,* 278 S.W.3d at 618. Having made his choice with "eyes open," the trial court could not deny his request absent a finding that it was submitted for an impermissible purpose, e.g., as a tactic to delay trial. Accordingly, his conviction for possession of a controlled substance (and the accompanying PFO conviction) must be reversed, his sentence for that conviction vacated, and this matter remanded to the trial court for a new trial consistent with this opinion. *See Hill,* 125 S.W.3d at 228–29, *modified on other grounds by Depp,* 278 S.W.3d at 619 ("[S]tructural defects in the constitution of the trial mechanism require automatic reversal. A prototypical example of a 'structural error' is the denial of the right to proceed *pro se....*") (citations and internal quotation marks omitted).

Having found cause for reversal, we need only consider the remaining issues that are likely to recur on remand.

**b. Retroactive Application of KRS 218A.1415**

---

19. Assuming, of course, that the waiver of counsel is otherwise made knowingly, intelligently, and voluntarily.

20. The trial court's reason for denying Appellant's request is also puzzling in light of the fact that it could have appointed stand-by counsel to ensure compliance with the applicable rules.

Appellant argues that he should be permitted to invoke the as-amended penalty for first-degree possession of a controlled substance. At the time Appellant was sentenced on this conviction, House Bill 463 (HB 463), which amended the previous penalty for first-degree possession of a controlled substance, was not yet enacted. HB 463 has since been codified at KRS 218A.1415. Because we are remanding this matter for a new trial, we see no reason not to permit Appellant to invoke the as-amended penalty if he is again convicted of first-degree possession of a controlled substance. *See Blane v. Commonwealth*, 364 S.W.3d 140, 156 (Ky.2012) (permitting appellant to invoke as-amended version of drug paraphernalia statute on remand for new penalty phase).

#### c. *Appellant's Maximum Aggregate Sentence for Severed Trial Convictions*

■ Appellant next argues that the prison sentences imposed pursuant to his severed convictions for possession of a controlled substance and escape should have been capped at twenty years. Specifically, he contends that additional offenses committed during an escape may run concurrently with the sentence imposed on the escape conviction, and that the twenty-year cap found in KRS 532.110(1)(c) must apply to those convictions.

As indicated in the previous section, if Appellant is once again convicted of possession of a controlled substance,[21] he is entitled to invoke KRS 218A.1415 as amended.[22] Under amended KRS 218A.1415, first-degree possession of a controlled substance is a Class D felony subject to a maximum prison sentence of three years. If that penalty is subject to PFO-enhancement (an issue that we do not decide today),[23] the maximum enhanced penalty for this conviction is twenty years. *See* KRS 532.080(6)(b) ("A person who is found to be a persistent felony offender in the first degree shall be sentenced to imprisonment as follows: ... If the offense for which he presently stands convicted is a Class C or Class D felony, a persistent

---

**21.** Although possession of a controlled substance was a lesser included offense of Appellant's indicted charge of trafficking in a controlled substance, the Commonwealth is precluded by the double jeopardy clause, U.S. Const. amend. V, from re-trying him for trafficking. *Smith v. Commonwealth*, 737 S.W.2d 683, 688 (Ky.1987). In *Smith*, this Court explained:

> As a result of the holding of the United States Supreme Court in *Price v. Georgia*, 398 U.S. 323, 90 S.Ct. 1757, 26 L.Ed.2d 300 (1970), the conviction of a defendant of a lesser-included offense constitutes an acquittal of all higher degrees of the offense. *Green v. United States*, 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199, (1957). Accordingly, if the conviction of the lesser-included offense is reversed on appeal, the defendant cannot be retried upon any other higher degrees of the offense. *See also Gunter v. Commonwealth*, 576 S.W.2d 518 (Ky.1978).

737 S.W.2d at 688.

**22.** As amended, KRS 218A.1415 provides, in pertinent part: "(2) Possession of a controlled substance in the first degree is a Class D felony subject to the following provisions: (a) The maximum term of incarceration shall be no greater than three (3) years, notwithstanding KRS Chapter 532; ...."

**23.** We reserve judgment on whether the three-year maximum penalty provided for in KRS 218A.1415 is subject to a PFO sentence enhancement. *See supra* note 21. In Appellant's brief, he cursorily suggests that the three-year cap is *not* subject to PFO enhancement—this contention is apparently based on the vague phrase "notwithstanding KRS Chapter 532." *See id.* However, this issue arose primarily because our decision to reverse and remand for a new trial provided an opportunity for Appellant to invoke the as-amended statute in the event that he is once again convicted of possession of a controlled substance. Thus, the issue has not been briefed and is not properly before the Court.

felony offender in the first degree shall be sentenced to an indeterminate term of imprisonment, the maximum of which shall not be less than ten (10) years nor more than twenty (20) years.").

Thus, any sentence imposed pursuant to future convictions for possession and PFO *greater than* ten years, to be run consecutively to his ten-year sentence for escape, would equal a total sentence of more than twenty years. For this reason, Appellant argues that KRS 532.110(1)(c) caps the aggregate sentence imposed on these convictions at twenty years.[24] We disagree.

KRS 532.110(3) provides:

Notwithstanding any provision in this section to the contrary, if a person is convicted of an offense that is committed while he is imprisoned in a penal or reformatory institution, during an escape from imprisonment, or while he awaits imprisonment, the sentence imposed for that offense may be added to the portion of the term which remained unserved at the time of the commission of the offense. *The sentence imposed upon any person convicted of an escape or attempted escape offense shall run consecutively with any other sentence which the defendant must serve.*

(Emphasis added.) Thus, any sentence imposed pursuant to a conviction on remand must run consecutive to the escape sentence. *See also* KRS 533.060(3)

("When a person commits an offense while awaiting trial for another offense, and is subsequently convicted or enters a plea of guilty to the offense committed while awaiting trial, the sentence imposed for the offense committed while awaiting trial *shall not run concurrently* with confinement for the offense for which the person is awaiting trial.") (emphasis added).

In fact, we essentially resolved this issue in *Gaither v. Commonwealth,* 963 S.W.2d 621 (Ky.1997). After quoting KRS 532.110(3),[25] this Court noted: "The language of this section is unequivocal. The legislature obviously intended this section to be an exception to the other provisions of the statute." *Id.* at 622. To avoid any confusion, the opinion later notes that "[t]his section of the statute modifies the limit, or cap, placed on the sentence maximum set out in Section (1)(c) of KRS 532.110." *Id.*

Accordingly, if on remand Appellant is again convicted of possession of a controlled substance, any sentence imposed thereon must run consecutively to his sentence for escape—even if it results in an aggregate sentence of *more* than twenty years. *See id.*

### III. CONCLUSION

In conclusion, we: (1) reverse Appellant's conviction for possession of a con-

---

24. KRS 532.110(1)(c) provides:
When multiple sentences of imprisonment are imposed on a defendant for more than one (1) crime, including a crime for which a previous sentence of probation or conditional discharge has been revoked, the multiple sentences shall run concurrently or consecutively as the court shall determine at the time of sentence, except that ... [t]he aggregate of consecutive indeterminate terms shall not exceed in maximum length the longest extended term which would be authorized by KRS 532.080 for the highest class of crime for which any of the sen-

tences is imposed. In no event shall the aggregate of consecutive indeterminate terms exceed seventy (70) years; ....
Because the highest class of crime Appellant could be convicted of is a Class D felony (possession of a controlled substance), the maximum sentence authorized under KRS 532.110(1)(c) and KRS 532.080(6)(b) is twenty years.

25. At the time *Gaither* was rendered, the applicable language appeared in subsection (4) of KRS 532.110.

trolled substance, vacate his sentence for that conviction, and remand for a new trial consistent with this opinion; and (2) affirm Appellant's remaining convictions and corresponding sentences.

All sitting. All concur.