RENDERED:  MARCH 19, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-0262-DG

JONATHON TAYLOR                                                      APPELLANT


ON DISCRETIONARY REVIEW FROM HARDIN CIRCUIT
v.                                          COURT
HONORABLE KEN M. HOWARD, JUDGE
ACTION NO. 19-XX-00007


COMMONWEALTH OF KENTUCKY                                 APPELLEE


OPINION
REVERSING AND REMANDING

** ** ** ** **

BEFORE:  GOODWINE, MAZE, AND MCNEILL, JUDGES.

GOODWINE, JUDGE:  Jonathan Taylor ("Taylor") appeals from the Hardin

Circuit Court order affirming the Hardin District Court's order denying Taylor's

motion to suppress the results of his breathalyzer test.  After careful review, we

reverse and remand.

On December 16, 2018, Trooper Kyle Lashley stopped Taylor on

suspicion that he was driving under the influence.  According to the citation,

Trooper Lashley observed Taylor swerving across the center line of the road and became concerned for the safety of other motorists. The trooper could smell the odor of an alcoholic beverage, and Taylor admitted to drinking three "tall boy" beers and that he would likely blow over the legal limit. Taylor failed field sobriety tests. Trooper Lashley arrested Taylor and transported him to the Hardin County Detention Center. At the jail, the trooper administered an Intoxilyzer test.

Taylor was charged with, *inter alia*, operating a motor vehicle with an alcohol concentration of above 0.08, second offense.[1] He moved to suppress the results of his breathalyzer test, arguing the breath test results were invalid because he spit chewing tobacco from his mouth during the twenty-minute observation period. The district court held a hearing on the matter, during which Trooper Lashley and Taylor testified.

Trooper Lashley testified that, upon arrest, he transported Taylor to the jail and asked him to submit to a breath test. The trooper took Taylor to the Intoxilyzer room, turned on the Intoxilyzer machine, and recorded an observation time. He testified Taylor stood next to him. The trooper stated he usually sits down with a DUI suspect in the Intoxilyzer room and begins working on the citation during the observation period. Trooper Lashley recalled reading the

---

[1] Kentucky Revised Statutes (KRS) 189A.010(5)(b).

implied consent form to Taylor that evening and observed Taylor for approximately thirty-one minutes before administering the breath test.

When the Commonwealth asked whether Trooper Lashley observed Taylor introduce anything into his oral or nasal cavity during the observation period, the trooper responded that he did not recall. If he had observed Taylor doing so, he testified he would have restarted the observation period. Trooper Lashley did not remember whether he restarted the observation period in this case.

Trooper Lashley reviewed video surveillance footage of the encounter. He testified the footage was hard to see, and it lacked audio. Based on his review of the video footage, Trooper Lashley could not say that Taylor did not spit something from his mouth during the observation period.

The trooper testified he believed he performed the Intoxilyzer test according to the manufacturer's instructions, but he did not recall whether he restarted the observation period. Trooper Lashley further testified he did not recall whether Taylor spit something from his mouth during the observation period or whether he checked Taylor's mouth for foreign substances before beginning the observation period.

Taylor testified that, during the observation period, he asked Trooper Lashley for a trash can, so he could spit out his chewing tobacco. Taylor stated he did not have tobacco in his mouth when he blew into the machine, but there could

have been debris in his mouth. Taylor contended the surveillance footage confirms his version of events.

The Commonwealth stipulated the surveillance footage shows that, after submitting to the test, Taylor walked to a table with his property in a ziplock bag and retrieved something from the bag. Taylor testified that he retrieved chewing tobacco from the bag and put some in his mouth.

After taking the matter under submission to review the jail surveillance video, the district court denied Taylor's motion. The court found that even if it were to believe Taylor removed chewing tobacco from his mouth during the 20-minute observation period, "it is clear that tobacco does not contain alcohol and the only possible effect would be if there were a recent swig of alcohol that were absorbed into the tobacco and held in the mouth like a sponge holding the liquid." Record (R.) at 55. The district court further opined that if Taylor's chewing tobacco absorbed alcohol, then "the Intoxilyzer reading should be a residual mouth alcohol and not a .214. . . . [T]here is no corroborating testimony that there would have been any recently absorbed alcohol to still be in the tobacco to affect the test." *Id.* Taylor entered a conditional guilty plea to the charge of DUI second offense, reserving the right to appeal any of the district court's pretrial rulings.

Taylor then appealed to the circuit court, arguing the Intoxilyzer results should have been excluded because the trooper did not observe Taylor for a full twenty minutes after he removed smokeless tobacco from his mouth. The circuit court affirmed the district court's order denying Taylor's motion to suppress. The court found, "[w]hether or not Taylor was 'dipping smokeless tobacco during the 20-minute observation period' is a factual dispute in this case," and "the [district] court [was] in the best position to judge the credibility of the witnesses and observe the video." R. at 29.

Taylor sought discretionary review, which this Court granted. On appeal, Taylor argues the results of the breathalyzer test should have been suppressed because: (1) the trooper failed to follow proper procedure in administering the breathalyzer test; (2) the observation period was shorter than twenty minutes; and (3) the presence of smokeless tobacco or another foreign substance in a subject's mouth invalidates Intoxilyzer results.

We apply the following standard in reviewing the denial of a motion to suppress:

> [W]e consider the trial court's findings of fact "conclusive" if they are "supported by substantial evidence." RCr[2] 9.78. Using those facts [if supported], the reviewing court then conducts a *de novo* review of the trial court's application of law to those facts to

---

[2] Kentucky Rules of Criminal Procedure.

> determine whether the decision is correct as a matter of law.

*King v. Commonwealth*, 374 S.W.3d 281, 286 (Ky. 2012) (internal quotation marks and citation omitted); *see also Simpson v. Commonwealth*, 474 S.W.3d 544, 546-47 (Ky. 2015) (holding that the standard of review of a trial court's decision regarding a motion to suppress remains the same, even after RCr 9.78 was deleted and superseded by RCr 8.27).

KRS 189A.103(4) provides: "A breath test shall consist of a test which is performed in accordance with the manufacturer's instructions for the use of the instrument." Furthermore, the Supreme Court of Kentucky requires the Commonwealth to meet five foundation requirements for the results of a breath alcohol test to be admissible:

> 1) That the machine was properly checked and in proper working order at the time of conducting the test.
>
> 2) That the chemicals employed were of the correct kind and compounded in the proper proportions.
>
> 3) That the subject had nothing in his mouth at the time of the test and that he had taken no food or drink within fifteen minutes prior to taking the test.
>
> 4) That the test be given by an operator who is properly trained and certified to operate the machine.
>
> 5) That the test was administered according to standard operating procedures.

*Commonwealth v. Roberts*, 122 S.W.3d 524, 526 (Ky. 2003). The Supreme Court of Kentucky determined the distinction between "manufacturer's instructions" and "standard operating procedures" is "a distinction without a difference." *Id.* at 527.

Here, the Commonwealth failed to establish "[t]hat the test was administered according to standard operating procedures." *Id.*[3] The Kentucky Breath Test Operational Procedures outline a ten-step process for administering a breath test. The first step is to put the Intoxilyzer machine in standby mode. The second step reads as follows:

> Check for MOUTH SUBSTANCES and read the following:
>
> During the next 20 minutes you are not allowed to eat, drink, smoke or place anything in your mouth or nasal passages. Do you have anything in your mouth at this time?

The third step is to record the observation time and begin the twenty-minute observation period. The fourth step involves checking the machine to make sure it is functioning properly. The fifth step requires the person administering the test to read the implied consent warning. Sixth, the subject must be allowed to attempt to contact an attorney. Seventh, the person administering the test must ask the subject

---

[3] Another panel of this Court also used the *Roberts*' rationale to affirm a circuit court's reversal of a district court's order denying a defendant's motion to suppress the results of his breathalyzer test and remanded for further proceedings. *See Commonwealth v. Mefford*, No. 2016-CA-000840-DG, 2017 WL 4863183 (Ky. App. Oct. 27, 2017).

to submit to the test. The test is then administered, and the subject must be offered an opportunity to have his own test performed.

Here, the Commonwealth failed to establish that Trooper Lashley followed the second step of the procedure. Trooper Lashley did not recall whether he checked Taylor's mouth, told him not to put anything in his mouth, or asked whether there was anything in his mouth. This is telling because Trooper Lashley testified about turning on the machine, making sure the machine was functioning properly, and reading Taylor the implied consent warning. Furthermore, the citation establishes Taylor attempted to contact an attorney but was unable to do so, consented to the breath test, and decided not to have his own test.

It is important to note that had Trooper Lashley followed the testing guidelines, Taylor would have emptied his mouth prior to the start of the observation period rather than after it began. Taylor testified the tobacco was in his mouth when he entered the room, and he asked the trooper if he could put another "dip" in his mouth after the test was conducted. As such, the evidence shows Trooper Lashley failed to follow this key step of the standard operating procedures. Therefore, the Commonwealth failed to establish that it met the foundation requirements necessary to admit the breath test results, so we must reverse the circuit court's order and remand with instructions that the circuit court reverse the district court's order denying Taylor's motion to suppress. Because the

-8-

foundation requirements were not met, we need not address Taylor's arguments regarding whether the observation period was at least twenty minutes or whether the presence of smokeless tobacco or another foreign substance in a subject's mouth invalidates Intoxilyzer results.

For the foregoing reasons, we reverse the circuit court order and remand with instructions to reverse the order of the Hardin District Court denying Taylor's motion to suppress.

ALL CONCUR.


BRIEFS FOR APPELLANT:

Adam Cart
Elizabethtown, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Philip W. Moore
Special Assistant Attorney General
Assistant Hardin County Attorney
Elizabethtown, Kentucky