Dwayne MITCHELL (aka David Butin), Appellant

v.

COMMONWEALTH of Kentucky, Appellee.

No. 2012–SC 000697–MR.

Supreme Court of Kentucky.

Feb. 20, 2014.

Katie L. Benward, Assistant Public Advocate, Counsel for Appellant.

Jack Conway, Attorney General, William Bryan Jones, Assistant Attorney General, Counsel for Appellee.

Opinion of the Court by Justice SCOTT.

A Jefferson Circuit Court Jury found Appellant, Dwayne Mitchell, guilty of two counts of first-degree robbery, two counts of first-degree burglary, two counts of first-degree unlawful imprisonment, one count of receiving stolen property, and being a second-degree persistent felony offender (PFO). As a result, Appellant was sentenced to thirty years' imprisonment. He now appeals as a matter of right, Ky. Const. § 110(2)(b), asserting that (1) the trial court erred by failing to dismiss his indictment, (2) the trial court violated his right to hybrid representation, (3) the trial court erred by allowing the prosecution to introduce misleading photographs, (4) the trial court erred by denying his motions for directed verdict on both counts of first-degree robbery, (5) the trial court's jury instructions omitted an essential element of first-degree robbery, (6) the trial court erred by denying his motion for directed verdict on both counts of unlawful imprisonment, (7) the trial court failed to inquire into standby counsel's admission that he discussed the case in front of a juror, and (8) he was improperly indicted as a PFO. For the following reasons, we reverse Appellant's convictions and remand the case to the trial court for further proceedings in accordance with this Opinion.

## I. BACKGROUND

In September 2010, as Robert Hughes unlocked the door to his apartment in Old Louisville, a man approached him with a knife, ordering him into the apartment. The intruder bound Hughes's hands and feet, scoured the apartment for valuables, and left with several items of electronic equipment.

Lynessa Staples was at work when her apartment in Louisville's east end was burglarized less than a month later. She reported several items stolen, including stereo equipment. The police later recovered Staples's property and returned it to her.

In October 2010, Michael Gibson was cooking breakfast in his Old Louisville apartment when a man entered and claimed he was looking for Gibson's roommate. Gibson informed the man that his roommate was not home, but he let the man in to use the restroom. Once the man returned to the kitchen, Gibson offered him breakfast. The man declined and pulled a knife on Gibson. The interloper bound Gibson and ransacked his apartment, taking several valuable items. The intruder also stole Gibson's Chevy pickup truck.

Two days later, Officers Nick Masterson and William Hirtzel were on patrol in Louisville's east end when they noticed a pickup truck carelessly parked at an odd angle outside of an apartment building. Officer Masterson then saw a man carrying an item to the truck from the apartment complex. Believing that he had seen the same man in the area a week earlier around the time another apartment was burglarized, Officer Masterson instructed Officer Hirtzell to apprehend the man. Seeing Officer Hirtzell approaching, the man dropped what he was carrying and fled toward the complex.

The suspect ran into Stephanie White's apartment. Officer Hirtzell found White standing outside and received permission to search her apartment. The officers discovered Appellant hiding in White's bathroom. They also found a distinctive sweater behind White's couch and a knife behind her bedroom dresser. White testified that she did not see Appellant throw the sweater and that the knife police found was not

hers. The truck at the scene was identified as stolen and belonging to Michael Gibson.

Following his arrest, Appellant was indicted by a Jefferson County Grand Jury for first-degree robbery, first-degree burglary, and first-degree unlawful imprisonment for the offenses against Robert Hughes. He was also indicted for first-degree robbery, first-degree burglary, first-degree unlawful imprisonment, and receiving stolen property for the offenses against Michael Gibson. Appellant also received indictments for first-degree burglary relating to his intrusion into White's apartment and second-degree burglary based on the stereo equipment stolen from Staples's apartment. Finally, Appellant was indicted as a second-degree PFO.

The case proceeded to a jury trial, and the jury returned a verdict finding Appellant guilty of all counts except the burglary charges relating to Staples and White, for which he was acquitted. After the Commonwealth presented evidence establishing Appellant's prior convictions, the jury also found Appellant to be a second-degree PFO and recommended a total sentence of thirty years' imprisonment. At final sentencing, the trial court adopted the jury's recommendation. This appeal followed.

## II. ANALYSIS

### A. Grand Jury Procedure

Appellant first argues that his indictment should have been dismissed because the Commonwealth failed to follow certain grand jury procedures. Specifically, Appellant alleges that the grand jury breached its duty to inquire into Appellant's offenses after he had been held to answer, failed to make a written report declining to indict or referring to the next grand jury, and failed to indict him within sixty days of the date he was held to answer.

RCr 6.12 provides that an indictment is not invalid because of a defect, unless that defect tends "to prejudice the substantial rights of the defendant on the merits." In other words, an indictment may be dismissed if there is "flagrant abuse of the grand jury process that resulted in both actual prejudice and deprived the grand jury of autonomous and unbiased judgment." *Caldwell v. Commonwealth,* No. 2008–SC–000411–MR, 2010 WL 2025124, at *3 (Ky. May 20, 2010) (quoting *Commonwealth v. Baker,* 11 S.W.3d 585, 588 (Ky.App.2000)). We review a trial court's decision concerning the dismissal of an indictment for an abuse of discretion. *Id.* The test for abuse of discretion "is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Anderson v. Commonwealth,* 231 S.W.3d 117, 119 (Ky.2007) (citing *Goodyear Tire & Rubber Co. v. Thompson,* 11 S.W.3d 575, 581 (Ky.2000)).

Appellant's case was originally scheduled to go before the grand jury on December 20, 2010. However, the grand jury adjourned that day without considering Appellant's offenses. According to the Commonwealth, the grand jury left without reaching Appellant's case because the court did not want to keep jurors late during the holiday season. A second grand jury was later convened and it returned an indictment against Appellant on January 4, 2011.

Appellant claims that his indictment should have been dismissed because the first grand jury's failure to inquire into his offenses was a violation of RCr 5.02's requirement that the grand jury inquire into every offense for which a person has been

held to answer.[1] Appellant further asserts that, pursuant to RCr 5.22, the first grand jury was required to produce a written report either declining to indict him or referring his case to the next grand jury in order to confine Appellant beyond sixty days and that it failed to do so.[2]

The Commonwealth admits that the first grand jury adjourned without inquiring into Appellant's offenses and does not dispute that Appellant was held for over sixty days despite the fact that the grand jury never issued a written report. However, the Commonwealth asserts that none of the procedural defects alleged by Appellant require dismissal of the indictment. For the reasons that follow, we agree with the Commonwealth that the trial court did not err in concluding that dismissal of the indictment was unwarranted.

First, Appellant's argument that a violation of RCr 5.02 requires dismissal is unpersuasive because nothing in the text of the rule requires dismissal of a subsequent indictment in the event that an offense goes unconsidered by a grand jury. Similarly, nothing in RCr 5.22 requires dismissal of a subsequent indictment in the event that a grand jury fails to make a written report. Furthermore, RCr 5.22 does not mandate the dismissal of a subse-

quent indictment after a defendant is erroneously held to answer for over sixty days.

In fact, RCr 5.22(2) expressly provides that when a defendant is held to answer for over sixty days, the remedy is release from custody, not dismissal of any future indictment. *Peercy v. Paxton*, 637 S.W.2d 639, 639 (Ky.1982). Moreover, the remedy of discharge from custody "applies only while a defendant remains unindicted." *Id.* Therefore, once the second grand jury indicted Appellant, RCr 5.22(2) became no longer applicable. *Id.*

Having determined that there is no basis for a dismissal of his indictment in the civil rules cited by Appellant, the only question remaining is whether the irregularities in the grand jury proceedings in this case "prejudice[d] the substantial rights of the defendant on the merits." RCr 6.12. Appellant claims that he was prejudiced because he did not receive a copy of the first grand jury's written report. Specifically, Appellant alleges that this report could have provided him with notice of possible defenses and weaknesses in the prosecution's case.

Had the grand jury convened and decided against indicting Appellant, we would need to address whether the failure to turn over the grand jury's report resulted in

---

1. The relevant portion of RCr 5.02 states, "The court shall swear the grand jurors and charge them to inquire into every offense for which any person has been held to answer and for which an indictment or information has not been filed, or other offenses which come to their attention or of which any of them has knowledge."

2. RCr 5.22 states in pertinent part:

(1) If the defendant has been held to answer and the votes of the grand jurors are insufficient in number to find an indictment, the foreperson shall so report forthwith to the circuit court in writing. The circuit court shall order a discharge of the defendant from custody, and exoneration of

the bail or a refund of any money or bonds deposited as bail, as the case may be.

(2) Final adjournment of a grand jury without its having indicted a defendant who has been held to answer, pursuant to RCr 3.14(1), shall effect the defendant's discharge from custody or, if the defendant is free on bail that has not been forfeited, shall exonerate the bail and any conditions thereon unless the grand jury refers the matter to the next grand jury, which referral must be in writing to the circuit court.... In any event, a defendant who has been held to answer ... for longer than sixty (60) days without having been indicted shall be entitled to a discharge from custody.

prejudice to Appellant. However, in this instance, where Appellant has offered no evidence whatsoever that the first grand jury ever considered his case, and the Commonwealth has explained that the grand jury did not reach the case because it ran out of time near the holidays, we find Appellant's argument that he was prejudiced by not receiving the grand jury's report unavailing. Because the first grand jury never heard Appellant's case, there is no way that it could have produced a report that would have alerted Appellant to possible weaknesses in the prosecution's case. Therefore, we must conclude that Appellant has not shown that the grand jury proceedings "prejudice[d] [his] substantial rights." *Id.* Accordingly, we find that the trial court's decision to overrule Appellant's motion to dismiss his indictment was supported by "sound legal principles." *Anderson*, 231 S.W.3d at 119 (citing *Goodyear Tire*, 11 S.W.3d at 581). Thus, the trial court did not abuse its discretion. *Id.*

**B. The Trial Court Erred by Denying Appellant His Right to Hybrid Representation**

Appellant next argues that his waiver of counsel was invalid because the trial court erred when it misinformed him that he could not proceed to trial with a hybrid form of representation. Specifically, Appellant asserts that the trial court denied him his right to represent himself for one pretrial motion while still retaining the services of counsel for the remainder of the proceedings.

In response, the Commonwealth acknowledges that the trial judge informed Appellant that the only way to present his motion was to completely waive counsel. Nonetheless, the Commonwealth asserts that the trial court's misstatement of the law was rendered irrelevant by additional concerns that Appellant subsequently developed regarding his representation. In particular, the Commonwealth claims that Appellant came to believe that his counsel had broken the attorney-client privilege. According to the Commonwealth, this new concern with counsel's loyalty led Appellant to seek standby counsel rather than hybrid representation, and, therefore, any error in the denial of hybrid representation was cured when the court eventually appointed standby counsel, satisfying Appellant's overriding request. We cannot agree with the Commonwealth's contentions and, therefore, must reverse.

Both the Sixth Amendment to the United States Constitution and Section Eleven of the Kentucky Constitution guarantee a defendant the right to assistance of counsel. *See e.g., Commonwealth v. Martin*, 410 S.W.3d 119, 122 (Ky.2013); *King v. Commonwealth*, 374 S.W.3d 281, 290 (Ky.2012). Accompanying this state and federal constitutional right is a concomitant right to waive counsel and proceed without representation. *See e.g., Faretta v. California*, 422 U.S. 806, 835, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975); *Depp v. Commonwealth*, 278 S.W.3d 615, 617 (Ky.2009). Additionally, the Kentucky Constitution, unlike the Constitution of the United States, affords criminal defendants the right to hybrid representation. *Wake v. Barker*, 514 S.W.2d 692, 696 (Ky.1974). Kentucky courts view hybrid representation as "a limited waiver of counsel whereby [the defendant] acts as co-counsel with a licensed attorney." *Allen v. Commonwealth*, 410 S.W.3d 125, 139 (Ky.2013) (citing *Stone v. Commonwealth*, 217 S.W.3d 233, 236 n. 1 (Ky.2007)). Here the record reveals that Appellant was misled as to his right to proceed with a hybrid form of representation.

During a pretrial hearing on March 3, 2011, Appellant expressed a desire to file pro se motions. Appellant's appointed

counsel informed the court that he could not file Appellant's motions for him. Counsel explained that it was his ethical duty not to file the motions because he believed they were meritless. The court informed Appellant that as long as he had counsel of record the court would not entertain pro se motions. The trial judge then posited that Appellant could represent himself but cautioned "that would be a big mistake." Appellant replied that he did not want to represent himself but simply wanted to file his motion because counsel would not submit it to the court. Later in the hearing, the trial judge reiterated that Appellant's "only other choice," if he wanted to file a pro se motion, was to represent himself. Appellant then offered the qualified response that "with this hearing" and "with this motion" he would take his chances representing himself. At that point, Appellant's counsel interjected, informing the judge that Appellant could represent himself for purposes of this motion only. The judge responded that this was not an option and advised Appellant to discuss the matter with counsel prior to the next pretrial hearing because Appellant's decision would mean that "you're going to be going all through this case without counsel."

■ Considering the above-described exchange between Appellant, defense counsel, and the trial judge, we find merit in Appellant's argument that the trial court erred by informing him that he could not proceed with hybrid representation. Ky. Const. § 11. We acknowledge that we have previously held that the trial court is under no duty to sua sponte inform a defendant of his right to hybrid counsel. *Id.; Padgett v. Commonwealth*, 312 S.W.3d 336, 344 (Ky.2010). And, with our ruling today, we continue to adhere to that approach. However, we have also repeatedly held that it is error for a trial

judge to affirmatively misrepresent a defendant's choice of counsel as "only two alternatives: either represent himself or accept appointed counsel." *Baucom v. Commonwealth*, 134 S.W.3d 591, 592 (Ky. 2004); *see also Stone*, 217 S.W.3d at 235–36 (explaining that "the trial court clearly erred by failing to inform the Appellant that hybrid representation was his right" after the trial court agreed with appointed counsel's assertion that Appellant's only options were representation by a public defender or proceeding pro se); *Deno*, 177 S.W.3d at 758 (finding error where the trial judge "informed Appellant, incorrectly, that Appellant had only two choices regarding his representation, and that acting as co-counsel was not one of them.").

Applying *Baucom, Stone, and Deno* to the present case, we hold that the trial court erred by imposing a Hobson's choice on Appellant: either take counsel or leave it. The false dichotomy created by the trial judge was demonstrably harmful to Appellant because, up until the judge's misstatement of the law, Appellant's comments made it clear he wanted to represent himself only for the limited purpose of entering his pro se motion. Hybrid representation would have allowed him to do so while also retaining his appointed counsel for the remainder of the proceedings. *See Allen v. Commonwealth*, 410 S.W.3d 125, 139 (Ky.2013) (explaining that a defendant may specify that particular portions of his defense will be conducted by counsel while others will be undertaken pro se); *Stone*, 217 S.W.3d at 236 n. 1.

■ In this instance, the Commonwealth's argument that the trial court's misinformation on the subject of Appellant's right to hybrid representation was rendered irrelevant by his later request for standby counsel is unpersuasive. The Commonwealth is correct that after he was informed that he could not file his pro se

motion and retain the services of counsel for the remainder of trial, Appellant changed the nature of his request to ask for standby counsel. However, it is only logical that a defendant's request for hybrid counsel would dissipate once the trial court ruled out such a manner of representation. A defendant cannot be expected to continue to request a hybrid form of representation in the face of a judge who has made it clear he would not permit it.

Moreover, on the particular facts of this case, we cannot find that the trial judge's misstatement of the law was not a substantial factor in Appellant's indecisiveness as to which form of representation he desired. Had he been allowed to argue his motion pro se and retain counsel for the remainder of the proceedings, as was his right under the Kentucky Constitution, it is rational to conclude that Appellant may never have requested standby counsel. The record reflects that Appellant's ongoing concern was simply ensuring that his pro se motion was filed.

At the next pretrial hearing, held on May 2, 2011, Appellant began by stating that he would be "more comfortable" representing himself. However, similar to the manner in which he qualified his statements at the first pretrial hearing, Appellant asserted that he needed counsel removed for the express purpose of entering his pro se motion and this was the "only way to go about it I see." Of course, Appellant's belief that the only way to get his motion heard was to proceed pro se was owing to the trial court's earlier statement ruling out the possibility of hybrid representation.

The following pretrial hearing, on June 3, 2011, was held for the purpose of conducting a *Faretta* inquiry.[3] Near the beginning of the hearing, Appellant asked if he could enter his pro se motion but retain the services of his public defender as standby counsel. The judge replied that such an arrangement would be subject to his approval. In response, Appellant stated that he would go through with the hearing "if that's the only way I can enter the motion, if I can remove him." Appellant once again qualified his statement to the judge, stating "we can skip this hearing if I can enter this pro se motion right now." Up to this point, Appellant's statements continued to belie his desire to enter his pro se motion and retain counsel for the rest of the trial.

Another twenty minutes passed while the judge researched cases in open court and conducted the required *Faretta* colloquy. After having had his right to hybrid counsel overlooked yet again and having fielded numerous *Faretta* questions, Appellant asserted that he needed no further information and that he was "begging" to have counsel removed from his case. Admittedly, Appellant used strong language in conveying a desire to remove counsel. But, in this context, Appellant's assertion that he did not need any more information indicated frustration with the length of pretrial proceedings and his inability to file his pro se motions more so than it reflected any deep-seated conflict with counsel.

Following Appellant's statement that he was "begging" to have counsel removed, the trial court once again advised Appellant against proceeding pro se, stating that

---

**3.** When a defendant exercises his right to waive the assistance of counsel, a *Faretta* hearing must be held to ensure that the defendant's waiver is knowing, intelligent, and voluntary. *Grady v. Commonwealth*, 325 S.W.3d 333, 342 (Ky.2010). A *Faretta* hearing is required not just for a full waiver of counsel but also when a defendant invokes his right to hybrid representation. *Id.*

simply being unhappy with counsel was a poor reason to forego representation. Counsel interposed to explain that he felt that his inability to file Appellant's pro se motion was a "substantial part" of the rift that developed between the two. Additionally, counsel reminded the court that he had earlier asked that Appellant simply be allowed to argue his pro se motion. Finally, counsel stated, "We have gotten to this point as a result that started with that incident."

At this point, Appellant changed the tenor of his request for representation yet again, asking permission to proceed pro se without even standby counsel. Appellant asserted that counsel's inability to file Appellant's motions was "just a small part" of the rift that had developed between the two. Even more, Appellant claimed that the attorney-client privilege had been broken and professed that counsel had lied to him about information disclosed to the prosecution. The trial judge was dismissive of Appellant's claimed violation of the attorney-client privilege, but even so, he ultimately determined that Appellant could represent himself. At the conclusion of the *Faretta* hearing, the judge assigned standby counsel despite Appellant's contention that it was not needed.

Appellant's accusation that counsel breached the attorney-client privilege serves as the Commonwealth's most convincing evidence in favor of its argument that the trial court's earlier error in misinforming Appellant as to the possibility of hybrid representation was rendered irrelevant by a subsequent deterioration in the attorney-client relationship. Nevertheless, taking into account the totality of the circumstances leading up to Appellant's statement that the attorney-client privilege was broken, we cannot hold that the trial court's earlier misstatement of the law was not the primary factor in Appellant's decision to proceed to trial pro se.

That is to say, although the Commonwealth argues that conflict over the attorney-client privilege led Appellant to seek to represent himself, the record shows differently. For one, Appellant began the *Faretta* hearing by asking for standby counsel. This request is at odds with the Commonwealth's claim that Appellant had subsequently developed other concerns about his attorney and shows that Appellant still placed trust in his appointed counsel. Moreover, counsel's own assertion that the rift was related to his inability to file Appellant's motions also casts doubt on the Commonwealth's argument.

Furthermore, Appellant's actions at trial serve as further evidence that he desired hybrid representation rather than standby counsel. Although Circuit Judge Cowan had presided over the pretrial hearings, Circuit Judge Morris was substituted to conduct the trial. In an effort to clarify the roles of Appellant and counsel at trial, the judge asked Appellant if he would be handling voir dire. Appellant indicated that he would do jury selection. Next, the judge asked if Appellant would give an opening argument. In response, Appellant stated that he would prefer if counsel presented the opening. Counsel expressed frustration, stating that he was not prepared to do the opening statement. Ultimately, the court ordered Appellant to give his own opening argument. Under the hybrid form of representation, Appellant would have been able to specify that he wanted hybrid counsel to give an opening statement.

In the end, we are unconvinced by the Commonwealth's argument that Appellant's subsequent vacillations of opinion in the type of counsel he desired rendered the trial court's earlier misstatement of the law irrelevant. Appellant's statements are

just as readily attributable to emotion and his desire to file his pro se motions as they are to any superseding conflict with counsel. Thus, we hold that the trial court erred by misinforming Appellant that he could not represent himself for his pro se motion yet retain hybrid counsel for the remainder of the proceedings. For purposes of clarity, we reiterate that nothing in our holding requires trial courts to sua sponte inform defendants of their right to hybrid representation. We simply conclude that it is error for the trial court to misstate that a form of hybrid representation is unavailable in response to an inquiry by a defendant or his counsel.

■ In this instance, the trial court failed to correct its misstatement of the law, thus Appellant proceeded to trial under the belief that hybrid counsel was not an option. A trial court error the end result of which is to deny a defendant the right to hybrid representation amounts to structural error. *See Baucom*, 134 S.W.3d at 592. "A defendant must be given his/her constitutional right . . . to have hybrid representation. In this case, because the trial judge misstated the law, it is necessary for this Court to reverse and remand for a new trial." *Deno*, 177 S.W.3d at 758 (citations omitted).

Having found cause for reversal, we now turn our attention to the remaining issues raised by Appellant. We will only consider such other issues as may call for dismissal or are likely to recur on remand.

## C. Admission of Photographs

■ We next turn to Appellant's assertion that photographs depicting a pickup truck with a sweater hanging from its open door and Appellant wearing the same sweater were admitted in error. We address this issue because it may resurface on remand.

The sweater is of importance because Officers Masterson and Hirtzell, who eventually apprehended Appellant, both testified that the man they saw carrying property to the stolen truck was wearing the sweater. Thus, if the sweater belonged to Appellant it would tend to tie him to the stolen vehicle.

The distinctive sweater was found discarded in White's living room after Appellant was apprehended in the bathroom. An unidentified police officer then took the sweater out to the truck that Appellant was seen carrying property to. A photo was taken of the truck with the sweater draped across the driver's door. Later, the police had Appellant put the sweater on and took a photo of him wearing it. Officer Hirtzell admitted at trial that the sweater was not found on the pickup truck.

Appellant argues that the photos were staged to create the inference that the sweater was associated with Appellant and with the stolen truck. Therefore, according to Appellant, the photographs were erroneously admitted at trial in violation of KRE 901 and KRE 403. We agree.

KRE 901(a) provides that "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." The Commonwealth admits that the photographs depict Appellant and the scene after they were altered by the inclusion of the sweater. Nonetheless, the Commonwealth argues that this admission on the part of Officer Hirtzell makes the photographs admissible because "the matter in question is what its proponent claims." KRE 901(a).

■ Although not binding on this Court, we find the Ninth's Circuit's opinion in *United States v. Stearns* is instructive in the present case:

A picture may also be inadmissible, although technically accurate, because it portrays a scene that is materially different from a scene that is relevant to one of the issues at trial. Before admitting a photograph into evidence, the trial court must find that the dangers of such distortion or wrong emphasis are sufficiently remote so that the trier of fact may consider the photographs for the purposes offered. These are principally questions of authentication.

550 F.2d 1167, 1170 (9th Cir.1977).

Applying *Stearns* to this case, we find that the photos at issue may be technically accurate, but they portray a scene "materially different from a scene that is relevant to the issues at trial." *Id.* Therefore, the potential for "wrong emphasis" by the jury is sufficient to deny admission of the photographs. *Id.* Moreover, it would strain credulity for this Court to determine that photographs of a scene materially altered to associate a criminal defendant with a crime are "authentic" because the prosecution admits to the misleading alteration.

Furthermore, the prosecution had a myriad of alternatives, such as photographing the truck and Appellant as they were found or not introducing the photographs at all. There was no need to expose the jury to these photographs. Thus, we conclude that the photographs depicting the sweater on Appellant's person and draped over the truck were admitted in error. Consequently, upon retrial, these particular photographs should not be admitted as part of the Commonwealth's case in chief.

#### D. Sufficiency of Evidence

■■■ Appellant argues that insufficient evidence was put forward to justify a finding of guilt on both first-degree robbery charges. This argument is based on the allegation that the Commonwealth did not prove that the robberies were carried out with a "deadly weapon." We address this issue because a finding that there was insufficient evidence to convict on the first-degree robbery charges would bar a retrial on these issues.

■■■ When a trial court is moved to enter a directed verdict, it must draw all fair and reasonable inferences from the evidence in favor of the Commonwealth. *Commonwealth v. Benham,* 816 S.W.2d 186, 187 (Ky.1991). Where the evidence is sufficient to induce a reasonable juror to believe beyond a reasonable doubt that the defendant is guilty, a directed verdict should be refused. *Id.* On appeal, a court should consider the evidence as a whole, and question whether it was clearly unreasonable for a jury to find guilt. *Id.* Furthermore, an appellate court should consider "the same evidence considered by the trial court, rightfully or wrongfully." *Burton v. Commonwealth,* 300 S.W.3d 126, 144 (Ky.2009).

KRS 515.020(1) defines robbery in the first degree:

(1) A person is guilty of robbery in the first degree when, in the course of committing theft, he uses or threatens the immediate use of physical force upon another person with intent to accomplish the theft and when he:

(a) Causes physical injury to any person who is not a participant in the crime; or

(b) Is armed with a deadly weapon; or

(c) Uses or threatens the immediate use of a dangerous instrument upon any person who is not a participant in the crime.

At trial the Commonwealth introduced testimony from Hughes and Gibson that Appellant held each of them at knifepoint at different points as Appellant ransacked

their apartments for valuables. This evidence directly implicates Appellant with the use of a dangerous instrument in the course of committing a theft. KRS 515.020(1)(c). Applying this evidence in favor of the Commonwealth, a reasonable juror could find beyond a reasonable doubt that Appellant committed first-degree robbery. *Benham*, 816 S.W.2d at 187. Consequently, we find that a directed verdict was not merited on either count of first-degree robbery.

### E. Jury Instructions

■■■ Appellant next argues that the trial court's instructions for both counts of robbery in the first degree omitted essential elements of the offense. In support of his argument, Appellant maintains that the trial court did not include the element of a "deadly weapon" or a "dangerous instrument" in the jury instructions. The Commonwealth concedes that the above terms were omitted from the instructions for first-degree robbery, admitting that the term "knife" was used instead. However, the Commonwealth points out that both terms were defined in a separate portion of the instructions and argues that the instructional error was ultimately harmless. We address this argument as the issue is capable of repetition at trial.

■■■ As explained above, because sufficient evidence was admitted to find Appellant guilty of both counts of first-degree robbery, a directed verdict was not merited regardless of the mistake in the jury instructions. However, we agree with Appellant's contention that the use of the word "knife" does not comport with statutory language of KRS 515.020(1).

"[I]nstructions in criminal cases should conform to the language of the statute." *Parks v. Commonwealth*, 192 S.W.3d 318, 326 (Ky.2006). Therefore, upon remand, the trial court should instruct the jury in accordance with the statutory language, i.e., "deadly weapon" and/or "dangerous instrument."

### F. Kidnapping Exemption

■■■ Appellant next argues that the trial court erred by failing to dismiss both counts of unlawful imprisonment in the first degree pursuant to the kidnapping exemption statute, KRS 509.050, which in certain circumstances precludes an unlawful imprisonment conviction.[4] The trial court determines whether the exemption applies, and we review that determination under the abuse of discretion standard. *Duncan v. Commonwealth*, 322 S.W.3d 81, 94 (Ky.2010). We address this issue because a finding that the kidnapping exemption should have been applied would bar a retrial on both counts of unlawful imprisonment.

■■■ This Court has interpreted KRS 509.050 as requiring a three-prong test to determine when the kidnapping exemption applies:

First, the underlying criminal purpose must be the commission of a crime defined outside of KRS ˙ [Chapter] 509. Second, the interference with the victim's liberty must have occurred immediately with or incidental to the commission of the underlying intended crime. Third, the interference with the victim's liberty must not exceed that which is

---

4. KRS 509.050 states, in pertinent part:
    A person may not be convicted of unlawful imprisonment in the first degree ... when his criminal purpose is the commission of an offense defined outside this chapter and his interference with the victim's liberty occurs immediately with and incidental to the commission of that offense, unless the interference exceeds that which is ordinarily incident to the commission of the offense which is the objective of his criminal purpose.

ordinarily incident to the commission of the underlying crime.

*Stinnett v. Commonwealth,* 364 S.W.3d 70, 77 (Ky.2011) (quoting *Hatfield v. Commonwealth,* 250 S.W.3d 590, 599 (Ky. 2008)). "All three prongs must be satisfied in order for the exemption to apply." *Id.*

The Commonwealth does not dispute that the first two prongs apply. However, the Commonwealth asserts that the restraint of both victims exceeded that which is ordinarily incident to the commission of a robbery. KRS 509.050. At trial, the Commonwealth presented evidence that Hughes and Gibson were each restrained during the robberies of their respective apartments. Hughes testified that he was restrained for approximately forty-five minutes. Gibson's testimony stated that Appellant was in his apartment for around forty-five minutes.

 This Court has construed the kidnapping exemption statute narrowly. *Duncan v. Commonwealth,* 322 S.W.3d 81, 94 (Ky.2010). In order for it to apply, the restraint must have been "close in distance and brief in time." *Timmons v. Commonwealth,* 555 S.W.2d 234, 241 (Ky.1977). In *Duncan,* we held that a restraint of five to ten minutes imposed by the defendant as he forced the victim to walk to the area where sexual abuse would occur exceeded that which was ordinarily incident to the crime. *Duncan,* 322 S.W.3d at 94–95. Here, where the confinements were alleged to have lasted forty-five minutes, we cannot find that the trial judge abused his discretion by not applying the kidnapping exemption. The trial judge's decision not to employ the exemption was neither "arbitrary, unreasonable, unfair, [n]or unsupported by sound legal principles." *Anderson,* 231 S.W.3d at 119 (citing *Goodyear Tire,* 11 S.W.3d at 581).

As was previously explained, Appellant's convictions must be reversed and the case remanded for a new trial. Thus, we decline to address the remaining issues raised by Appellant because they are unlikely to recur on remand.

## III. CONCLUSION

For the foregoing reasons, Appellant's conviction is reversed and this case if remanded to the trial court for further proceedings consistent with this opinion.

All sitting. All concur.