# IMPORTANT NOTICE
# NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

# $\mathfrak{Supreme\ Court\ of\ Kentucky}$

## 2015-SC-000511-MR

WALTER SCHMUCK      APPELLANT

ON APPEAL FROM GRAYSON CIRCUIT COURT
V.      HONORABLE BRUCE T. BUTLER, JUDGE
NO. 14-CR-00113

COMMONWEALTH OF KENTUCKY      APPELLEE

## MEMORANDUM OPINION OF THE COURT

## REVERSING, VACATING AND REMANDING

A Grayson Circuit Court jury convicted Appellant, Walter Schmuck, of manufacturing methamphetamine, possession of synthetic drugs, and possession of drug paraphernalia. The trial court imposed a sentence of twenty years' imprisonment. Schmuck appeals to this Court as a matter of right, pursuant to §110(2)(b) of the Constitution of this Commonwealth. On appeal, Schmuck argues the trial court erred by: 1) denying his motion for a limited waiver of counsel without conducting the hearing required by *Faretta v. California*, 422 U.S. 806 (1975); 2) denying his motion to suppress evidence; 3) admitting a photograph into evidence that showed him handcuffed; 4) allowing evidence of a prior conviction during the penalty phase; and 5) denying his motion for a mistrial.

# I. BACKGROUND

Leitchfield Police received complaints about high traffic volume and unusual activity at David Hicks's home. A confidential informant told police David Hicks sold hydrocodone and morphine pills from the home. The informant also told police David Hicks used methamphetamine and David's nephew, Rickey Hicks, made methamphetamine "inside of a shed outside of the residence." Police accessed the pseudoephedrine log (required for all pharmacies selling the drug, pursuant to KRS 218A.1446) and discovered the names of five people who used David Hicks's address when purchasing over-the-counter medication often used in manufacturing methamphetamine. Schmuck's name did not appear in the pseudoephedrine log when police queried David Hicks's address. Police then sought a search warrant. The supporting affidavit—and the search warrant the court subsequently issued—specifically named the five individuals who purchased pseudoephedrine using David Hicks's address. Schmuck's name did not appear in the search warrant, nor its supporting affidavit.

Schmuck stated that he had been staying at David Hicks's home for six to eight weeks when police executed the search warrant. When police arrived, they found Schmuck on the carport of the home. In addition to searching the individuals specifically named in the warrant, police searched Schmuck, his pockets, the room in which he claimed to be staying, along with dresser drawers and a zipped nylon bag found in that room. Police then arrested Schmuck.

One month prior to trial, Schmuck filed a pro se motion seeking a limited waiver of his right to counsel. In it, he asked the trial court to conduct a *Faretta* hearing to determine whether he knowingly, intelligently, and voluntarily sought the waiver. In the motion, he cited language indicating that failure to conduct a *Faretta* hearing results in an automatic reversal of any convictions. Furthermore, he asked for the hearing in order to specify the scope of representation of his court-appointed counsel. Ultimately concluding Schmuck was merely unhappy with his court appointed counsel, the trial court summarily denied Schmuck's motion without conducting the *Faretta* hearing. A jury subsequently convicted Schmuck of manufacturing methamphetamine, possession of synthetic drugs, and possession of drug paraphernalia.

## II. ANALYSIS

### A. *Faretta* Hearing

Schmuck first argues that the trial court committed structural error requiring reversal by denying his timely and unequivocal motion for a limited waiver of counsel without conducting a *Faretta* hearing. For the following reasons, we agree.

The United States Supreme Court set out the requirements for an accused to represent himself at trial in *Faretta*, 422 U.S. at 835. "In order to represent himself, the accused must 'knowingly and intelligently' forgo those relinquished benefits . . . . Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and

3

disadvantages of self-representation, so *that the record will establish* that he knows what he is doing and his choice is made with eyes open." *Id.* (emphasis added) (internal citations and quotation marks omitted).

Section 11 of the Kentucky Constitution also addresses this issue, stating: "[i]n all criminal prosecutions the accused has the right to be heard by himself and counsel . . . ." Our predecessor Court concluded this means "an accused may make a limited waiver of counsel, specifying the extent of services he desires, and he then is entitled to counsel whose duty will be confined to rendering the specified kind of services (within, of course, the normal scope of counsel services)." *Wake v. Barker*, 514 S.W.2d 692, 696 (Ky. 1974). "A trial court error the end result of which is to deny a defendant the right to hybrid representation amounts to structural error." *Mitchell v. Commonwealth*, 423 S.W.3d 152, 162 (Ky. 2014). Furthermore, "'structural defects in the constitution of the trial mechanism' require automatic reversal." *Hill v. Commonwealth*, 125 S.W.3d 221, 229 (Ky. 2004) *holding modified on other grounds by Depp v. Commonwealth*, 278 S.W.3d 615 (Ky. 2009) (*citing Arizona v. Fulminante*, 499 U.S. 279, 280 (1991)).

In order for a criminal defendant to make a full or limited waiver of the right to counsel, we have said, "the request must be: (1) timely; (2) unequivocal; and (3) knowing, intelligent, and voluntary." *King v. Commonwealth*, 374 S.W.3d 281, 290 (Ky. 2012). In short, a defendant must make a timely and unequivocal request before the trial court can determine, in a *Faretta* hearing, whether the waiver is knowing, intelligent, and voluntary. *Id.* at 291.

4

A request is timely if made prior to the beginning of meaningful trial proceedings, e.g., before jury selection or before empaneling a jury. *Id.* ("Although Appellant's request was made the day before trial . . . . we conclude that Appellant's request was timely.") Here, Schmuck requested a limited waiver of his right to counsel a full month prior to the start of trial. Therefore, we hold that Schmuck's request was timely.

Next, a defendant's request must be unequivocal, or "sufficiently clear and unambiguous that no reasonable person can say that the request was not made." *Commonwealth v. Martin*, 410 S.W.3d 119, 122 (Ky. 2013) (internal citations and quotation marks omitted). In this case, Schmuck filed a hand-written motion requesting to make a limited waiver of counsel, citing § 11 of the Kentucky Constitution. Not only was the motion clear, it was specific. Schmuck even went so far in his motion to request that the court conduct a *Faretta* hearing in order to determine whether his request "is being made knowingly, intelligently and voluntarily." When the trial court orally questioned him, Schmuck never wavered in his request, and he never withdrew his motion. Moreover, Schmuck correctly informed the trial court of the findings required in a *Faretta* hearing. In fact, Schmuck orally reiterated his desire to act as co-counsel with his court-appointed attorney, saying that he wanted the opportunity to cross-examine witnesses, if necessary, and to file motions. Given these facts, we hold that Schmuck unequivocally requested a limited waiver of his right to counsel.

5

We have held that a timely and unequivocal request is a condition precedent to a *Faretta* hearing—not a requirement demanded at the hearing. *King*, 374 S.W.3d at 291. And that the reason a defendant desires to represent himself is not a material factor in deciding whether to conduct a *Faretta* hearing.[1] *King*, 374 S.W.3d at 292 ("Appellant's desire to represent himself may have been derived from frustration with appointed counsel, but that is irrelevant . . . ."). Having held that Schmuck's request was both timely and unequivocal, we now address the consequences of the trial court's failure to conduct a *Faretta* hearing.

When a defendant timely and unequivocally requests to make a full *or* partial waiver of the right to counsel, the trial court must conduct a *Faretta* hearing. *King*, 374 S.W.3d at 291 (internal brackets omitted) ("[A] request to proceed pro se or with hybrid representation—in other words, to make either a full or a limited waiver of his right to counsel—under our precedent, a *Faretta* hearing is required.") This is because it is within the confines of the *Faretta* hearing that the trial court addresses "whether waiving the right to counsel [is] knowing, intelligent, and voluntary." *Id.* Therefore, if a trial court fails to conduct a *Faretta* hearing after a timely and unequivocal request, the trial court commits structural error that requires the reversal of any corresponding convictions. *See Mitchell*, 423 S.W.3d at 162; *Hill*, 125 S.W.3d at 229.

---

[1] This stands true whether the defendant wishes to proceed pro se or with hybrid counsel.

6

In the case at bar, just as in *King*, "the trial court asserted its opinion that Appellant didn't *really* want to represent himself, but instead that he wanted to be represented by someone *other* than appointed counsel." *King*, 374 S.W.3d at 294. Like the appellant in *King*, Schmuck's unhappiness with his appointed counsel may well have formed the basis for his desire to act as co-counsel. Also like the appellant in *King*, Schmuck never withdrew his motion.

Despite Schmuck's timely and unequivocal request for a limited waiver of his right to counsel, the trial court summarily denied the motion without conducting a *Faretta* hearing. The trial court erroneously stated that the defense could have but one "driver in the car." Therefore, we hold the trial court committed structural error by denying Schmuck's motion for a limited waiver of his right to counsel without conducting a *Faretta* hearing. *Mitchell*, 423 S.W.3d at 162. Because structural error requires automatic reversal, *Hill*, 125 S.W.3d at 229, we reverse Schmuck's convictions, vacate the corresponding sentences of imprisonment, and remand this matter to the trial court for further proceedings consistent with this opinion.

Having reversed and remanded on these grounds, we need only address the remaining issues likely to recur on remand in order to give guidance to the trial court.

## B. Suppression Motion

Schmuck next argues the trial court erred by failing to suppress the evidence against him. Schmuck asserts suppression was necessary because

7

police violated his right to be free from an unreasonable search and seizure pursuant to the Fourth Amendment of the United States Constitution. The text of the Fourth Amendment reads:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

On remand, the trial court must conduct a three-step analysis in determining whether to suppress the evidence found on Schmuck's person, in the dresser drawers, and in the nylon bag. The trial court must determine: 1) whether Schmuck had a reasonable expectation a of privacy; 2) whether the scope of the warrant particularly covered Schmuck's person, his room, and his effects; and 3) whether the supporting affidavit contained sufficient probable cause, particularized as to Schmuck, for a valid search warrant to issue.

The Commonwealth erroneously argues that Schmuck lacks standing to assert an expectation of privacy. Nearly forty years ago, the Supreme Court of the United States rejected using the standing doctrine to analyze whether a defendant had a legitimate expectation of privacy. *Minnesota v. Carter*, 525 U.S. 83, 87 (1998) ("The Minnesota courts analyzed whether respondents had a legitimate expectation of privacy under the rubric of 'standing' doctrine, an analysis that this Court expressly rejected 20 years ago in *Rakas [v. Illinois]*, 439 U.S. [128,] 139-140 [(1978)].") The Supreme Court said that defining Fourth Amendment rights fell more within the purview of substantive Fourth Amendment law than under that of standing. *Carter*, 525 U.S. at 88.

8

Furthermore, the Court reiterated its holding that in order to claim the protections of the Fourth Amendment, a defendant must demonstrate a reasonable expectation of privacy. *Id.* The United States Supreme Court held, the "capacity to claim the protection of the Fourth Amendment depends not upon a property right in the invaded place but upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place." *Rakas*, 439 U.S. at 143. When ascertaining the scope of the Fourth Amendment's protection, "arcane distinctions developed in property and tort law between guests, licensees, invitees, and the like, ought not to control." *Id.* Moreover, the extent "to which the Fourth Amendment protects people may depend upon where those people are. We have held that capacity to claim the protection of the Fourth Amendment depends . . . upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place."[2] *Carter*, 525 U.S. at 88 (internal citations and quotation marks omitted.)

The first part of the analysis requires the trial court to determine whether Schmuck had a reasonable expectation of privacy in the invaded place. The United States Supreme Court recognizes that "a person can have a legally sufficient interest in a place other than his own home so that the Fourth

---

[2] We recognize that while, "property rights are not the sole measure of Fourth Amendment violations, [one's reasonable expectation of privacy] . . . [does] not snuff out the previously recognized protection for property." *United States v. Jones*, 132 S. Ct. 945, 951 (2012) (internal brackets, citations, and quotation marks omitted).

Amendment protects him from unreasonable governmental intrusion into that place." *Rakas*, 439 U.S. at 142. In fact, "an overnight guest in a home may claim the protection of the Fourth Amendment, but one who is merely present with the consent of the householder may not." *Carter*, 525 U.S. at 90. In determining that the individuals complaining of the search fit into the latter category, the Court looked to "the purely commercial nature of the transaction . . . , the relatively short period of time on the premises, and the lack of any previous connection between respondents and the householder. . . ." *Carter*, 525 U.S. at 91. Without the expectation of privacy of an overnight guest, the Court held that the search in question did not violate the Fourth Amendment. With these guidelines in mind, on remand, the trial court must determine whether Schmuck possessed a reasonable expectation of privacy as an overnight guest, or whether he was merely on the premises with the permission of the householder.

Next, if the trial court determines that Schmuck had a reasonable expectation of privacy as an overnight guest, the court must then determine whether the scope[3] of the search warrant extends particularly to cover

---

[3] Two opinions of our predecessor Court may prove useful in determining the validity of the scope of the search warrant. In *Nestor v. Commonwealth*, the Court said:

> The mere fact that his premises were under the same roof and in the same building as other premises under the control of [the property owner] did not bring them within the terms of the warrant, and, there being no description of any character of appellant's premises or person, the officers were not authorized under the circumstances to enter or search his premises." 202 Ky. 748, 261 S.W. 270, 270–71 (1924).

Further, in *Williams v. Commonwealth*, our predecessor Court stated:

10

Schmuck's person, his room, and his effects—specifically, the nylon bag police opened and searched. The court must consider whether the nylon bag is Schmuck's personal effect to the extent contemplated in the Fourth Amendment. In so doing, the trial court should consider the Supreme Court's analysis in *Ybarra v. Illinois*, in which the Court stated, "[a]lthough the search warrant, issued upon probable cause, gave the officers authority to search the premises and to search [the individual named in the warrant], it gave them no authority whatever to invade the constitutional protections possessed individually by the tavern's customers." 444 U.S. 85, 92 (1979). The *Ybarra* Court also acknowledged that "general" or "open-ended warrants" are constitutionally prohibited.[4] *Id.* at 109, n.4.

Finally, if the trial court determines that the nylon bag, Schmuck's room, or Schmuck's person fall within the scope of the search warrant, the final step

---

[W]e are presented with the question of whether the search warrant in this case is a defective 'blanket' warrant because of its failure to contain a reasonably specific description of the objective of search. The law applicable to this case appears to be properly summarized . . . where it is said: Where a warrant describes premises in which different persons occupy different parts, and fails to name the accused or occupant or to designate a certain part of the premises, it is defective as a blanket search warrant. 261 S.W.2d 416, 417 (Ky. 1953).

[4] However, the Court went on to say:

It follows that a warrant to search a place cannot normally be construed to authorize a search of each individual in that place. The warrant for the Aurora Tap Tavern provided no basis for departing from this general rule. Consequently, we need not consider situations where the warrant itself authorizes the search of unnamed persons in a place and is supported by probable cause to believe that persons who will be in the place at the time of the search will be in possession of illegal drugs.

*Id.*

requires the trial court to determine whether the affidavit contained sufficient probable cause, particularized as to Schmuck, for a valid search warrant to issue. In *Ybarra*, "the police possessed a warrant based on probable cause to search the tavern in which Ybarra happened to be at the time the warrant was executed." *Id.* at 91. In that case, the Supreme Court said, "a person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person. Where the standard is probable cause, a search or seizure of a person must be supported by probable cause particularized with respect to that person." *Id.* (internal citations omitted). The Court went on to say, "[t]his requirement cannot be undercut or avoided by simply pointing to the fact that coincidentally there exists probable cause to search or seize another or to search the premises where the person may happen to be." *Id.* Unless the trial court determines that the supporting affidavit contains sufficient probable cause, particularized as to Schmuck, for a valid search warrant to issue, the trial court must suppress the evidence of which Schmuck complains.

## C. Introduction of Judgment from Prior Conviction in Penalty Phase

Schmuck also contends the trial court erred during the penalty phase of trial by allowing the Commonwealth to introduce a judgment from an Indiana court relating to a previous conviction for child molestation. Schmuck did not object to the court entering the judgment as evidence for the jury's consideration. On appeal, however, he contends the judgment contained prejudicial information, specifically "aggravating factors" the trial court

12

considered when imposing judgment. Among the aggravating factors the Indiana court listed was the fact that Schmuck committed that offense while on probation and had a history of criminal behavior. The Commonwealth introduced and the trial court admitted evidence this Court specifically rejected in *Mullikan v. Commonwealth*. In that decision, we said:

> [W]e hold today that the evidence of prior convictions is limited to conveying to the jury the elements of the crimes previously committed. We suggest this be done either by a reading of the instruction of such crime from an acceptable form book or directly from the Kentucky Revised Statute itself. Said recitation for the jury's benefit, we feel, is best left to the judge. The description of the elements of the prior offense may need to be customized to fit the particulars of the crime, i.e., the burglary was of a building as opposed to a dwelling. The trial court should avoid identifiers, such as naming of victims, which might trigger memories of jurors who may—especially in rural areas—have prior knowledge about the crimes.

*Mullikan v. Commonwealth*, 341 S.W.3d 99, 109 (Ky. 2011)

As we stated definitively in *Mullikan* and reiterated in *Webb v. Commonwealth*, when introducing evidence of prior convictions during the penalty phase, "the first and preferred method . . . is for the judge to recite the elements of the prior crimes to the jury." 387 S.W.3d 319, 330 (Ky. 2012). Trial courts risk reversal by deviating from these admonitions. Thus, on remand, the trial court should follow our precedent.

### D. Photograph

Finally, Schmuck contends the trial court erred by allowing the admission of a photograph showing him handcuffed outside David Hicks's residence. We agree with Schmuck that a generally accepted principle of Kentucky law forbids the jury from seeing the defendant handcuffed. RCr.

13

8.28(5). We see no meaningful difference between showing a photo of the defendant in handcuffs and the defendant appearing handcuffed at trial. Nonetheless, in limited circumstances, we have held that a photograph showing the defendant in handcuffs was not reversible error. *Estep v. Commonwealth*, 663 S.W.2d 213, 216 (Ky. 1983). However, determining an alleged error does not result in reversible error differs significantly from whether the trial court in fact erred. On remand, we strongly caution the trial court against admitting photographs showing Schmuck handcuffed without utilizing the KRE 403 balancing test.

### III. CONCLUSION

For the foregoing reasons, we reverse Schmuck's convictions, vacate his corresponding sentences, and remand this matter to the Grayson Circuit Court for further proceedings consistent with this opinion.

All sitting. Hughes, Noble, Venters, and Wright, JJ., concur. Minton, C.J., Cunningham, and Keller, JJ., concur in result only.

COUNSEL FOR APPELLANT:

Molly Mattingly, Assistant Public Advocate


COUNSEL FOR APPELLEE:

Andy Beshear, Attorney General of Kentucky
Courtney J. Hightower, Assistant Attorney General

15